United States Court of Appeals,

Eleventh Circuit.

Nos. 95-3377 to 95-3405.

Gloria J. ANDREWS, et al., Plaintiffs,

Donald Robert Woodman, Individually and as Next Friend of Scott Forrest Woodman and as personal representative for the Estate of Yvonne E. Woodman, Yvonne E. Woodman, Deceased, Scott Forrest Woodman, Candra Dawn Woodman, Steven Dwight Woodman, Seaman Apprentice, Plaintiffs-Appellees, Cross-Appellants,

v.

UNITED STATES of America, Defendant-Cross-Claimant-Counter-Claimant-Appellant-Cross-Appellees,

Waste Control of Florida, Inc., Waste Management, Inc., Defendants-Cross-Claimants-Counter-Defendants-Cross-Defendants,

Refuse Services, Inc., Defendant-Cross-Claimant-Counter-Defendant,

Duval Garbage Company, Defendant.

Alvin Lindsey Speicher, Gail P. Speicher, Alvin Lindsey Speicher, Jr., Plaintiffs-Appellees, Cross-Appellants,

Skyler R. Speicher, Plaintiff,

v.

United States of America, Defendant-Cross-Claimant-Counter-Claimant-Cross-Defendant-Appellant-Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Counter-Defendants-Cross Defendants.

Virginia Hansen Smith, as personal representative for the Estate of Michael Stramel, deceased, Plaintiff-Appellee, Cross-Appellant,

Michael Stramel, Plaintiff,

Tina M. McBeth, Chris Hansen, Jill Hansen Leslie, Eva E. Stramel, Plaintiffs-Appellees, Cross-Appellants.

v.

United States of America, Defendant-Cross-Defendant, Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants Cross-Defendants.

Gloria E. Braswell, Plaintiff-Appellee, Cross-Appellant,

v.

United States of America, Defendant-Cross-Defendant, Cross-Claimant-Counter-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants- Cross-Defendants-Counter-Defendants.

Carroll Pittman, Carolyn J. Pittman, Michael K. Pittman, Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Donald E. Leonard, Jr., Virginia M. Leonard, Plaintiffs-Appellees, Cross-Appellants,

Donald E. Leonard, deceased, Plaintiff-Cross-Appellant,

Wanda Leonard Harrison, Plaintiff-Appellee, Cross-Appellant,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

James E. Johnson, Dorothy T. Johnson, Terrance C. Johnson, Jimmy E. Johnson, Jimmy E. Johnson, Jr., Eugene B. Johnson, Plaintiffs-Appellees, Cross-Appellants,

v.

United State of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Clifton A. Todd, Jeanette A. Todd, Troy A. Todd, Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Counter-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants, Counter-Defendants.

Albert Ike Nolan, Jeanne Nolan, Carol Lynn Nolan, Adrienne Patience Nolan, Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Neal Thomsen, Jewell Thomsen, Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Evelyn Cauler Thiele, Trisha Ann Hill, Robert Craig Hill, Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Rayford E. Terrell, Glenda C. Terrell, Melissa Gail Terrell, Ray Eugene Terrell, Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Boy Elija H. O'Steen, Jr., Joan Marie O'Steen, Boy Elijah O'Steen, III, Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Charlie Raymond Smith, Plaintiff-Appellee, Cross-Appellant,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Janie L. Hansley, Janie P. Hansley, Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Counter-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants, Counter-Defendants.

Neil Hansen, Gretchen Hansen, Travis Earl Thornton, Jr., Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Henry Vorpe, Jr., Judy G. Vorpe, Christi D. Vorpe, Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Vivian E. Gore, Plaintiff-Appellee, Cross-Appellant,

Wiley H. Gore, Plaintiff, Cross-Appellant,

v.

4

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Richard Lawrence Gatz, Carol Ann Gatz, Cheryl Lea Gatz, Richard L. Gatz, Jr., Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

John P. Buettgen, Janice Buettgen, Dawn Buettgen, Plaintiff-Appellees, Cross-Appellants,

Jody Buettgen, Plaintiff-Appellee,

Kenneth Buettgen, Plaintiff-Appellee, Cross-Appellant,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Stephen Brannen, Misty Vell Brannen, Stephanie Jo Brannen, Sherrie Faye Brannen, Melissa Brannen McDaniel, Plaintiffs-Appellees, Cross-Appellants,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Patricia A. Guy, Plaintiff-Appellee, Cross-Appellant,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

John M. Flores, Florence Flores, Plaintiffs-Appellees, Cross-Appellants,

Patricia Jo Bell, as personal representative for the Estate of Florence Flores, deceased, Plaintiff,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Theresa A. Moody, Sonja J. Puhlick, deceased, Plaintiffs-Appellees, Cross-Appellants,

v.

United State of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Clara Herrick, Plaintiff-Appellee, Cross-Appellant,

Frank Herrick, as personal representative of the Estate of Clara Herrick, deceased, Plaintiff,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Gloria J. Andrews, a.k.a. Gloria J. Andrews Ellison, Plaintiff-Cross-Appellant,

Jerry Wayne Gayle, Plaintiff-Appellee, Cross-Appellant,

Joan M. O'Steen, as personal representative of the Estate of Gloria J. Andrews Ellison, deceased, Plaintiff,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Counter-Claimant-Appellant, Cross-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants-Counter-Defendants.

Kenneth Bell, Sr., Plaintiff-Appellant,

Deborah Bell, Robert Bell, Kenneth Bell, Jr., Jimmy Bell, Plaintiffs,

6

Jerry Bell, Patricia J. Bell, Matthew Bell, Michelle Bell, Plaintiffs-Appellants,

Henry Bell, Dolly Bell, deceased, James Richard Bell, Victoria Mae Bell, James R. Bell, Jr., Jamie Michelle Bell, Plaintiffs,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Carol Lynn Register, Plaintiff-Appellant,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Albert G. Belz. Betty Belz, John Clarence Belz, Plaintiffs,

Frederick G. Belz, I, Frederick G. Belz, II, Suzanne E. Belz, Plaintiffs-Appellants,

Robert J. Belz, William B. Belz, Plaintiffs,

Frederick G. Belz, III, Plaintiff-Appellant,

Mary M. Belz, Joshua Belz, Plaintiffs,

v.

United States of America, Defendant-Cross-Defendant-Cross-Claimant-Appellee,

Waste Control of Florida, Inc., Waste Management, Inc., Refuse Services, Inc., Defendants-Cross-Claimants-Cross-Defendants.

Sept. 17, 1997.

Appeals from the United States District Court for the Middle District of Florida. (No. 87-116-Civ-J-14), Marshall, Prentice H., Judge.

Before DUBINA, Circuit Judge, and HILL and GIBSON[*], Senior Circuit Judges.

DUBINA, Circuit Judge:

---

[*]Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

7

This case involves the contamination of groundwater near a Jacksonville, Florida, landfill by hazardous waste from two United States Navy bases. Plaintiffs/appellees/cross-appellants ("plaintiffs") are current and former residents of a semi-rural neighborhood surrounding the landfill. They sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, for damages resulting from the contamination. After a bench trial, the district court entered judgment against the government. The principal issue on appeal is whether the discretionary function exception to the FTCA bars plaintiffs' tort claims. We hold that the exception applies, and we reverse.

I. BACKGROUND

A. *FACTS*

Two United States Naval Air Stations operated in the Jacksonville area in the 1960s: NAS Jacksonville ("JAX") and NAS Cecil Field ("Cecil Field"). Both were engaged chiefly in aircraft maintenance, which generated large quantities of hazardous chemical waste.[1] The Navy handled this hazardous waste in three ways. First, Navy personnel poured some of the waste into 55-gallon drums and then placed the drums onto moveable bowsers for later disposal. Second, personnel placed containers holding other wastes into large, on-base dumpsters. Third, personnel at JAX poured large quantities of waste down industrial drains which led to an on-base sewage treatment plant. There, non-soluble waste (mainly paint shavings) was skimmed off and placed into a 2,500-gallon tank. The resulting clean water was flushed into the St. Johns River. As a result of the treatment process, the tank waste was no longer flammable, but it still contained hazardous chemicals.

Prior to 1964, the Navy disposed of all hazardous and other waste generated at JAX and Cecil Field in on-base pits and landfills. In 1964, the Navy contracted with a private company,

---

[1]This hazardous waste included paint, paint strippers, solvents, petroleum, lube oils, grease, degreasers, and cleaning solutions containing phenols, benzene, methylene chloride, vinyl chloride, and other chemicals.

Waste Control of Florida, Inc. ("Waste Control"), for off-base waste disposal. The district court explained the Navy's decision as follows:

> First, during the mid-1960s, the Navy developed a policy of contracting work to local businesses in order to contribute to the economies of the communities in which naval facilities were located. Secondly, smoke from the burning garbage interfered with base aviation and caused the bases' neighbors to complain. Lastly, the bases were running out of available disposal sites, and contracting out refuse collection and disposal services was more cost effective than purchasing additional land for new landfills.

*Woodman v. United States,* 764 F.Supp. 1455, 1457 (M.D.Fla.1991). The contracts provided that Waste Control would remove the household and industrial waste from the naval bases. The contracts specifically excluded acids and flammable liquids but did not exclude hazardous waste *per se.* The contracts were silent as to where and how Waste Control was to dispose of the waste. However, they required that Waste Control comply with all applicable laws and regulations concerning waste disposal. Finally, the contracts provided that the Navy would "have complete charge of and exercise full supervision and general direction of the work" and that Waste Control was "subject to government inspection."

Pursuant to the contracts, Waste Control emptied waste from the on-base dumpsters into front-loader trucks and transported it to off-base landfills. Waste Control also emptied the skimmed-off waste from the 2,500-gallon tank at JAX into a tanker truck for off-base disposal. Additionally, Waste Control took some of the 55-gallon drums to off-base landfills. Thus, Waste Control handled waste from all three of the Navy's avenues of disposal.

From 1964 to 1968, Waste Control disposed of Navy waste at landfills located some distance from the Navy bases. In April of 1968, Waste Control obtained an exclusive license to open and operate a landfill near Hipps Road in southwest Jacksonville, a more convenient location to the Navy bases. The Navy did not participate in selecting the site or in negotiating the license. The Hipps Road landfill occupied seven acres of a cypress swamp. Single family residences surrounded the landfill in all directions. At that time, the neighborhood was not connected to the Jacksonville water system. Residents obtained water from wells that tapped into a stream flowing beneath the swamp and landfill. Residents also used two nearby ponds for swimming and fishing. Waste

9

Control took all of its Navy waste to the Hipps Road landfill from April 1968 until the landfill reached capacity and closed in late 1969. Waste Control dumped the waste into unlined trenches at the site. Because the water table in the area was only four to six feet, the trenches filled with groundwater. The Navy was not involved in and did not supervise Waste Control's disposal methods.

Beginning in the early 1970s, neighborhood residents noticed that their water smelled bad, tasted funny, and left slippery brown scum in their sinks, tubs, and toilets. On two occasions, fish in the nearby ponds died in large numbers. In 1979 and 1981, in response to residents' complaints, the local health department tested neighborhood wells for the presence of bacteria. The tests were negative. Finally, in 1983, new tests revealed small amounts of volatile organic compounds in the well water. City, county, state, and federal agencies initiated numerous inquiries, investigations, and hearings. The City of Jacksonville ordered neighborhood residents not to drink the well water, supplied them with bottled water, and appropriated funds to extend the city water system to the Hipps Road area. In 1984, the Environmental Protection Agency ("EPA") added the Hipps Road landfill area to the Superfund National Priorities List. In 1988, the EPA brought an action against Waste Control pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 960(a). That suit settled and clean-up began.

B. *PROCEDURAL HISTORY*

These cases were brought in 1987 in a single action by 171 individuals comprising 53 families. Plaintiffs sued the government under the FTCA and CERCLA. Plaintiffs sued Waste Control and two affiliated companies under CERCLA and Florida common law. In their tort claims, plaintiffs sought damages for personal injury, property damage, diminished quality of life, and future medical monitoring expenses. In 1990, for administrative purposes, each family filed an additional, separate complaint, for a total of 53 civil actions. In 1993, the Woodman family amended their complaint to add a claim for the wrongful death of Mrs. Woodman, who was diagnosed with and died of cancer in December 1992, during the trial of this case.

10

In an important pretrial order, the district court denied the government's motion for summary judgment and granted plaintiffs' motion for a declaration that the discretionary function exception did not shield the government from liability under the FTCA. *See Woodman,* 764 F.Supp. 1455. Shortly before trial, plaintiffs settled their claims against Waste Control and its affiliates for $8.5 million, leaving only the FTCA and CERCLA claims against the United States.

The district court[2] conducted a five-phase, non-jury trial beginning in January 1992. The first phase of the trial concerned general liability and groundwater hydrology issues common to all plaintiffs. The second phase involved general toxicology issues, as well as the personal injury claims of 12 test plaintiffs.[3] The third and fourth phases of the trial concerned medical monitoring and the individual plaintiffs' water usage. The last phase was the trial of the Woodmans' wrongful death claim. The district court issued lengthy interim oral rulings following the first two phases of the trial. In January 1995, at the conclusion of all phases of the trial, the district court entered a 146-page unpublished order detailing its findings of fact and conclusions of law.

The district court ruled against the United States on both the CERCLA and FTCA claims. The court found that the Hipps Road landfill was not a proper site for disposal of hazardous chemical waste because of the proximity of residential wells and the closeness of the groundwater to the surface. Further, the court found that Waste Control failed to follow then-accepted waste disposal practices and local ordinances requiring that trenches be lined with limestone to prevent leaching. As a result, hazardous chemicals migrated into the groundwater and contaminated plaintiffs' wells. The district court found that the Navy acted negligently by (1) placing flammable solvents into the on-base dumpsters serviced by Waste Control, in violation of Navy policy and its contract with Waste Control; and (2) failing to supervise Waste Control's disposal of the waste from JAX and Cecil Field, in violation of its nondelegable duty under Florida law to monitor the activities

[2]Then Chief Judge Susan Black handled the case initially. Prior to trial, the case was reassigned to Senior Judge Prentice Marshall of the Northern District of Illinois.

[3]These plaintiffs claimed they suffered a variety of health problems, such as headaches, rashes, and diarrhea, as a result of exposure to the contaminated water.

11

of independent contractors hired to dispose of hazardous waste. The district court also held that the Navy was strictly liable under Florida law because it had used the land at Hipps Road in an unnatural and dangerous manner.

The district court awarded a variety of tort damages. First, the court found that those plaintiffs who were exposed to the contamination[4] had a heightened risk of developing cancer and other health problems and were entitled to damages for future medical monitoring expenses. Second, the court awarded damages for diminished quality of life to some plaintiffs and damages for personal injury to one plaintiff. Third, after concluding that Mrs. Woodman's cancer resulted from exposure to chemicals in her well water, the court awarded wrongful death damages to Mrs. Woodman's estate and her family. As to plaintiffs' CERCLA claims, the parties filed a stipulation awarding damages totaling $49,549.00 to 39 of the plaintiffs for the cost of obtaining alternate water supplies.

The total of all prevailing plaintiffs' awards against the United States was $3,648,436.80. The district court offset each prevailing plaintiff's CERCLA and FTCA damages by his or her share of the settlement with the private contractors. As a result of this offset, four plaintiffs ultimately received damage awards in a total amount of $1,394,012.01. Following the entry of final judgment, the United States perfected this appeal of the FTCA judgments. The United States does not challenge the CERCLA judgments. Plaintiffs cross-appealed an issue related to tort damages which we do not reach because we conclude that the United States is not liable under the FTCA.

II. STANDARD OF REVIEW

We review the district court's construction and application of the FTCA *de novo*. *Hughes v. United States,* 110 F.3d 765, 767 (11th Cir.1997) (*citing Powers v. United States,* 996 F.2d 1121, 1123 (11th Cir.1993)). In so doing, we accept the district court's findings of fact unless they are

---

[4]The court granted judgment against several dozen plaintiffs who did not reside within the area of contamination. Those plaintiffs have not appealed.

clearly erroneous. FED.R.CIV.P. 52(a); *Daley v. United States,* 792 F.2d 1081, 1086 (11th Cir.1986).

III. DISCUSSION

The FTCA is a limited waiver of the United States' sovereign immunity. *Powers,* 996 F.2d at 1124. The FTCA authorizes suits against the United States for damages caused by the tortious conduct of federal employees when such conduct would render a private actor liable under the law of the place where the conduct occurred. 28 U.S.C. § 1346(b). However, the FTCA does not permit claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

We apply a two-step test to determine whether the discretionary function exception applies in a particular case. First, we determine whether the challenged conduct involves an element of judgment or choice. *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988). The exception "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Id.* Second, if the challenged conduct involves discretion, we determine whether that discretion is "of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert,* 499 U.S. 315, 322-23, 111 S.Ct. 1267, 1273-74, 113 L.Ed.2d 335 (1991). The purpose of the exception is to "prevent judicial "second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984). Thus, we must ascertain whether the discretionary conduct was a policy decision. *Powers,* 996 F.2d at 1125. If so, the exception applies and shields the government from liability for the consequences of that conduct.

A. *DISTRICT COURT RULINGS*

In its 1991 pretrial order, the district court ruled that the discretionary function exception did not completely bar plaintiffs' FTCA claims. The court began its analysis as follows:

> All parties agree that the Navy's decision to use contractors to dispose of its waste falls within the discretionary function exception to the FTCA. Furthermore, all parties agree that the decision as to what to delegate to the contractor in the waste disposal contracts also falls within the discretionary function exception. Thus, what the court must determine is whether the Navy's internal regulations and policies or the waste disposal contracts contained mandatory duties which the Navy failed to perform.

*Woodman,* 764 F.Supp. at 1463. The district court concluded that the contracts between the Navy and Waste Control imposed an implicit mandatory duty upon the Navy "to ensure that unauthorized materials were not placed in the dumpsters by segregating its waste." *Id.* at 1465. Although the contracts did not set forth this obligation expressly, "[c]ommon sense dictates that if parties to a contract agree that only certain materials may be disposed of in dumpsters, the party disposing of the materials has the obligation to ensure that it complies with the terms of the contract." *Id.* The district court then found that undisputed evidence showed the Navy violated its mandatory duty to segregate flammable waste. Accordingly, the court ruled that the discretionary function exception did not bar plaintiffs' FTCA claims.[5]

The government raised the discretionary function exception defense again at trial. In its findings of fact and conclusions of law, the district court again rejected the defense, but for a different reason. The district court ruled that the Navy violated a nondelegable—and therefore non-discretionary—federal duty to dispose safely of its hazardous waste. The court relied upon *Dickerson, Inc. v. United States,* 875 F.2d 1577 (11th Cir.1989). In *Dickerson,* the government contracted with a private company to dispose of PCB[6]-contaminated waste oil from various military installations. The contractor failed to handle the waste properly, damaging a third party who sued

---

[5]We agree with the reasoning in the district court's pretrial order. As discussed *infra,* we conclude, as did the district court, that the discretionary function exception does not apply to the Navy's failure to segregate flammable wastes. The evidence presented at trial, however, showed that there was no causal link between the Navy's failure to segregate and the contamination of plaintiffs' wells. The district court did not have the benefit of this latter evidence at the time it issued its pretrial order.

[6]Polychlorinated biphenyls, long recognized to cause cancer.

14

the government. The government claimed the discretionary function exception shielded it from FTCA liability for failure to supervise the contractor. We disagreed, concluding that under applicable federal statutes, regulations, and policies, the government lacked the discretion to delegate responsibility for safe waste disposal. CERCLA and accompanying EPA regulations imposed mandatory duties upon hazardous waste generators to track and safely dispose of their waste. Likewise, internal government policy mandated "cradle to grave" responsibility for the safe disposal of PCBs. *Dickerson,* 875 F.2d at 1581. Accordingly, we held that the government was not insulated from liability for the actions of its contractor because its decision to delegate "did not involve the permissible exercise of policy judgment." *Id.* at 1582.

The district court ruled that, as in *Dickerson,* federal regulations and policies mandated that the Navy safely dispose of its hazardous chemical waste. CERCLA was not on the books in 1968. However, the district court pointed to: (1) a 1946 Manual on the Collection and Disposal of Refuse issued by the War Department which stated, "Do not select [waste disposal] sites which have surface or subsurface drainage to the water supply."; (2) a general safety manual issued by the Corps of Engineers in 1941 and 1967—and explicitly incorporated into the Navy's contracts with Waste Control—which provided that "disposal of surplus or excess material shall be by burial in a manner which will not contaminate or pollute water supply, groundwater, or streams."; (3) a 1966 Department of Defense directive on environmental pollution control which instructed, "No waste shall be discharged into waters if it contains any substances in concentrations which are hazardous to health."; and (4) a 1948 executive order by then-President Truman directing heads of federal agencies to ensure that waste disposal practices comported with state laws designed to prevent water pollution. The district court concluded that these internal regulations and orders imposed mandatory, nondelegable duties on the Navy, thereby removing the Navy's discretion in the arena of waste disposal.

B. *APPLICABILITY OF DISCRETIONARY FUNCTION EXCEPTION*

The government contends that the discretionary function exception shields it from liability under Florida's strict liability scheme and from liability for negligent failure to supervise Waste Control. The government argues that the district court ruled correctly that the exception covered the Navy's decision to contract out the safe disposal of its hazardous waste. However, the government argues that the district court's second ruling on the issue—that the Navy remained bound by mandatory federal directives to ensure that disposal of its waste did not result in groundwater pollution—was incorrect. The government maintains that no federal statute, regulation, or policy prevented the Navy from delegating its responsibility for safe waste disposal. We agree.

The law is clear that the government may delegate its safety responsibilities to independent contractors in the absence of federal laws or policies restricting it from doing so. *See, e.g., Feyers v. United States,* 749 F.2d 1222 (6th Cir.1984) (government was entitled to delegate responsibility for safety of rail yard workers to their private employers); *Hall v. United States,* 825 F.Supp. 427 (D.N.H.1993) (government immune from liability for accident sustained in elevator of federal building where government contracted with private company to provide elevator maintenance); *Ellis v. United States,* 780 F.Supp. 783, 787 (D.Utah 1991) ("It is also well established that the decision to assign safety responsibility to a contractor cannot form the basis for tort liability against the government."). Plaintiffs point to no authority limiting the discretion of the Navy to delegate responsibility for complying with applicable waste disposal safety regulations. The regulations cited by the district court direct that waste disposal not pollute the water, but they neither explicitly nor implicitly forbid the government from delegating responsibility for compliance. *Dickerson,* on which the district court relied, is distinguishable because the laws at issue there imposed cradle-to-grave responsibility on the government to ensure the safe disposal of the PCBs it generated. *See Dickerson,* 875 F.2d at 1581. Those laws stripped the government of discretion to delegate its safety responsibilities. No such laws restricted the Navy in this case. *See Kirchmann v. United States,* 8 F.3d 1273 (8th Cir.1993) (pre-CERCLA federal regulations governing Air Force's

16

disposal of waste did not impose mandatory duties upon Air Force when it contracted with private party for waste disposal).

Moreover, as the district court noted, the Navy's decision to delegate was grounded in policy concerns. *Woodman,* 764 F.Supp. at 1467 (citing reasons for Navy's decision to hire private contractor to dispose of waste). Therefore, both prongs of the Supreme Court's test for determining applicability of the discretionary function exception are satisfied. The exception shields the government from tort liability for consequences flowing from the Navy's decision to delegate waste disposal to Waste Control. It follows that the government is not strictly liable under Florida law for Waste Control's negligence.

Nor is the government liable for negligent failure to supervise Waste Control. The discretionary function exception encompasses government decisions about how and how much to supervise the safety procedures of independent contractors. *Varig Airlines,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (FAA's decisions to delegate responsibility for inspecting aircraft to manufacturer and to conduct "spot check" monitoring of manufacturer were discretionary acts ); *Johns v. Pettibone Corp.,* 843 F.2d 464 (11th Cir.1988) ("safety decisions represent an exercise of discretion giving rise to governmental immunity"). The government may lose the protection of the exception if, having delegated responsibility, it "has also retained and exercised control over the project's safety." *Duff v. United States,* 999 F.2d 1280, 1282 (8th Cir.1993); *see also Phillips v. United States,* 956 F.2d 1071, 1076-77 (11th Cir.1992). But, the retention of open-ended supervisory authority that "allow[s] the government's employees to exercise choice and discretion" does not render the exception inapplicable. *Domme v. United States,* 61 F.3d 787, 791 (10th Cir.1995); *see also Kirchmann,* 8 F.3d at 1276 ("Where no statute or regulation controls the government's monitoring of a contractor's work, the extent of monitoring required or actually accomplished is necessarily a question of judgment, or discretion, for the government."). Although the contracts between the Navy and Waste Control provided that the Navy would supervise Waste Control's disposal activities, the contracts did not specify how the Navy would carry out that

17

supervision. Thus, the Navy acted within the province of its discretion in deciding how to supervise Waste Control's performance under the contract. Additionally, courts have recognized that decisions regarding the exercise of supervisory authority are of the sort the discretionary function exception was designed to encompass. *Domme,* 61 F.3d at 791-93; *Kirchmann,* 8 F.3d at 1277-78.

## C. *LIABILITY FOR FAILURE TO SEGREGATE WASTE*

Although the discretionary function exception shields the government from liability under theories of strict liability or negligent failure to supervise, the exception does not apply to the Navy's violation of its mandatory duty not to place flammable liquid waste in the on-base dumpsters. The government concedes that under its contracts with Waste Control, the Navy had a mandatory duty to segregate waste and that the Navy violated that duty by placing flammable materials in the dumpsters. Therefore, the discretionary function exception does not insulate the government from liability under the FTCA for damages that resulted from the Navy's failure to segregate waste.

The government contends, however, that violation of the duty to segregate waste is not a basis for tort liability because the Navy's failure to segregate did not cause the pollution. Rather than placing some of its flammable waste into the dumpsters, the Navy could have dumped *all* of its flammable waste into the on-base sewer without violating its contract with Waste Control. The treatment system then would have processed the waste so that it was no longer flammable but still toxic. The waste would have ended up in the 2,500-gallon tank at JAX. The district court found that Waste Control transported *all* Navy waste, including tank waste, to the Hipps Road landfill. Had the Navy dumped all flammable waste into the sewer, it would have been in compliance with its contract with Waste Control because the contract provided only that Waste Control would not handle *flammable* waste. The contract did not restrict the Navy's disposal of nonflammable hazardous waste. Thus, there was no nexus between the Navy's breach of its duty to segregate and the destination of its waste. Put another way, the Navy's failure to separate flammable waste from other waste (hazardous and not) did not cause the contamination of plaintiffs' wells.

18

Plaintiffs fail to refute this argument, and we deem it persuasive. The district court did not reach the causation question because it assumed the discretionary function exception did not apply. However, the discretionary function exception forecloses all tort claims against the Navy except those related to the Navy's negligent failure to segregate waste. Causation is an element of a negligence claim under Florida common law. *See generally McCain v. Florida Power Corp.,* 593 So.2d 500 (Fla.1992). Without it, there can be no liability for failure to segregate. Thus, the facts found by the district court foreclose the sole avenue of FTCA liability available to plaintiffs.

IV. CONCLUSION

The Navy exercised its discretion to delegate responsibility for safe disposal of its hazardous waste to a private contractor. The contractor caused the waste to contaminate groundwater in a residential neighborhood, thereby damaging plaintiffs. We hold that the discretionary function exception shields the government from strict liability for the contractor's actions and from liability under a theory of negligent failure to supervise because the Navy was free to delegate its safety responsibilities when these events occurred. We note that Congress has since enacted federal environmental legislation mandating nondelegable responsibility for hazardous waste disposal on the part of those who generate it. Thus, our decision today is something of an anachronism.

We also hold that the discretionary function exception does not foreclose government liability for the Navy's negligent failure to obey its mandatory contractual duty to segregate flammable waste. The evidence adduced at trial, however, shows that plaintiffs' negligence claim based upon that breach must fail because a critical element of negligence under Florida law—causation—is missing. We therefore reverse the judgment of the district court holding the government liable under the FTCA and remand this case to the district court with directions to enter judgment for the United States on the FTCA claims.

REVERSED and REMANDED.